**UNITED STATES of America,
Appellee,**

v.

**Albert Junior HOLLEY, Appellant.**

No. 73–2299.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 5, 1974.

Decided May 20, 1974.

274

———♦———

Charles W. Hawks, Jr., Portsmouth, Va. [Court-appointed counsel], Hawks & Hawks, Portsmouth, Va., on brief), for appellant.

Roger T. Williams, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and CRAVEN and FIELD, Circuit Judges.

CRAVEN, Circuit Judge:

 In this bank robbery appeal we are concerned once again with the possibility of mistake and conviction of an innocent person inherent in the one-on-one positive identification rule. It is now settled beyond argument that the identification of a criminal actor by one person is itself evidence sufficient to go to the jury and support a guilty verdict and that application of this rule is not so fundamentally unfair as to be per se a denial of due process. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Stanley v. Cox, 486 F.2d 48 (4th Cir. 1973); United States v. Levi, 405 F.2d 380 (4th Cir. 1968); see 18 U.

S.C. § 3502. Even so, for reasons that will subsequently appear, we reverse and remand for a new trial, with instructions that prospectively adopt the rule of United States v. Telfaire, 152 U.S.App. D.C. 146, 469 F.2d 552 (1972).

On December 29, 1972, four armed men entered the First Virginia Bank of Nansemond and robbed it. All wore caps pulled down and turtleneck sweaters pulled up to partially conceal their faces. One of the robbers shot at a security guard, George Cipra, and threatened to "blow [his] . . . head off."

After Cipra was disarmed, he and all other employees were locked into the vault where their hands were tied and they were made to lie on the floor face down.

After the robbery, numerous photographs were exhibited to Cipra, including one of appellant Holley, but Cipra was unable to make an identification. Four months later, but prior to indictment, an FBI agent took Cipra to the Portsmouth city jail and had him walk through a day room in which ten prisoners were incarcerated. Cipra identified Holley as one of the robbers[1] and at trial made an in-court identification. Two other bank employees, at least one of whom had the same opportunity to see Holley as did Cipra, were unable to identify him. No other evidence, either circumstantial or direct, connected Holley to the robbery of the bank.

In United States v. Levi, 405 F.2d 380 (4th Cir. 1968), another bank robbery case, we approved a rule of the Court of Appeals for the District of Columbia that when identification is an issue the trial judge must instruct the jury:

(1) "[T]hat the evidence raises the question of whether the defendant was in fact the criminal actor and necessitates the juror's resolving any conflict in testimony upon this issue," and (2) "that the burden of proof is

---

1. Holley was in jail on another offense. In a pro se brief on appeal, Holley contends for the first time that Cipra first identified another of the ten men in the day room and did not select him until assisted by a Mr. Revell, an assistant jailor who accompanied Cipra.

upon the prosecution with reference to every element of the crime charged and this burden includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime charged." Jones v. United States, 124 U.S.App. D.C. 83, 361 F.2d 537, 542 (1966). 405 F.2d at 382–383.

We further instructed the district judges in this circuit that:

> In deciding whether to permit a criminal case to go to the jury, where identification rests upon the testimony of one witness, the district judge ought to consider with respect to identification testimony the lapse of time between the occurrence of the crime and the first confrontation, the opportunity during the crime to identify as compared with the opportunity of other witnesses who may be unable to do so, the reasons, if any, for failure to conduct a line-up or use similar techniques short of line-up, and the district judge's own appraisal of the capacity of the identifying witness to observe and remember facial and other features. In short, the district judge should concern himself as to whether the totality of circumstances "gives[s] rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). See Biggers v. Tennessee, 390 U.S. 404, 88 S.Ct. 979, 19 L. Ed.2d 1267 (1968). Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed. 2d 1199 (1967). 405 F.2d at 383.

■■ After our decision in *Levi*, the Court of Appeals of the District of Columbia viewed our decision as "the correct approach," United States v. Telfaire, 152 U.S.App.D.C. 146, 469 F.2d 552, 555 n. 5 (1972) and took it a step further. In *Telfaire* the District of Columbia Circuit in effect required ∟nat our *Levi* instruction to the district judges be given by the trial judge to the jury. We agree that to guard against misidentification and the conviction of

the innocent it is not enough that the trial judge himself be specifically alerted to the detailed factors that enter into the totality of the circumstances, but that the jury should also be so charged. In *Telfaire* the District of Columbia Circuit adopted generally for judges within the district a model instruction, using material from Judge Aldisert's opinion in United States v. Barber, 442 F.2d 517 (3rd Cir. 1971), but permitting variation and adaptation to suit the proof and contentions of a particular case. We now do likewise as to the district judges in this circuit. As an Appendix to this opinion, we reprint the *Telfaire* model instruction. Prospectively, we shall view with grave concern the failure to give the substantial equivalent of such an instruction, but it is not our purpose to require that it be given verbatim.

In adopting the *Telfaire* rule, we do so, of course, in the context of a case that contains no evidence of identification except eyewitness testimony. Where there are corroborating circumstances the district judge will, of course, modify the model instruction so as to refer to them. He will then charge the jury that it must be convinced beyond a reasonable doubt of the accuracy of the identification either by the identification testimony or the other circumstances, if sufficient, or both.

■ In the case at bar, the district judge correctly referred to the question of identification as one of the primary issues in the case and cautioned the jury that they must test Cipra's testimony "with all other testimony, or evidence that you find credible in this case." There was, as previously noted, no other evidence of identification of Holley except that of Cipra. In United States v. Salliey, 360 F.2d 699, 702 (4th Cir. 1966), we said that the law "must be applied within the context of the facts as developed in a given case, and a trial judge's instructions to the jury must reasonably relate to the factual situation of the case." Here there was insufficient application of the law to the facts.

The instruction had an abstract quality divorced from the concrete facts of the case.

> The circumstances of the out-of-court identifications were, for example, of crucial importance in this case. The trial judge could well have pointed out to the jury with greater particularity the need to evaluate the reliability of these identifications.

Gregory v. United States, 133 U.S.App. D.C. 317, 410 F.2d 1016, 1025, cert. denied, 396 U.S. 865, 90 S.Ct. 143, 24 L. Ed.2d 119 (1969); *see* Jones v. United States, 124 U.S.App.D.C. 83, 361 F.2d 537 (1966).

██ Although we could not reasonably expect of the district judge that he anticipate today's adoption of the *Telfaire* rule, we think the identification testimony here was so lacking in positiveness as to strongly suggest the "likelihood of irreparable misidentification," Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), and that the jury should have been specifically instructed to consider the possibility of misidentification under the specific circumstances revealed by the evidence.

██ In holding it error to fail to sufficiently relate the law to the particular facts of the case—whatever the jury may find them to be—we distinguish that requirement from (1) commenting on the *weight* of the evidence and (2) marshalling or summing up the evidence. While a United States district judge has the power to comment on the weight of the evidence even to the point of expressing his opinion as to credibility, Quercia v. United States, 289 U.S. 466, 469–470, 53 S.Ct. 698, 77 L.Ed. 1321 (1933), he is not required to do so, and his failure to do so is not error. United States v. Cohen, 145 F.2d 82, 92 (2d Cir. 1944), cert. denied, 323 U.S. 799, 65 S. Ct. 553, 89 L.Ed. 637 (1945). Likewise, a district judge may also properly marshal or sum up the evidence—in great detail if he wishes to do so—but it is the better practice that he not do it in

detail, and it is certainly not error that he fails to marshal the evidence in the sense, commonly meant, of summarizing all of it. United States v. Gillilan, 288 F.2d 796, 798 (2d Cir.), cert. denied sub nom., Apex Distributing Co. v. United States, 368 U.S. 821, 82 S.Ct. 38, 7 L. Ed.2d 26 (1961); *Cohen, supra,* at 92–93. To make the distinction clearer it should be noted that it is possible to marshal the evidence in great detail and yet fail to apply the law to the facts as may be found by the jury. It is the latter that is error. *Cf.* C. Wright and A. Miller, Federal Practice and Procedure: Criminal § 485 (1969) ("Content of Instructions—In General") *with* § 488 ("Content of Instructions—Comment on the Weight of the Evidence").

Jury instructions "should be drawn with reference to the particular facts of the case on trial," Collazo v. United States, 90 U.S.App.D.C. 241, 196 F.2d 573, 578, cert. denied, 343 U.S. 968, 72 S.Ct. 1065, 96 L.Ed. 1364 (1952), and "ought not be conveyed merely in boilerplate abstractions," United States v. Lozaw, 427 F.2d 911, 916 (2d Cir. 1970). Because abstract instructions that are not "adjusted to the facts of a particular case," Adjmi v. United States, 346 F.2d 654, 658 (5th Cir.), cert. denied, 382 U. S. 823, 86 S.Ct. 54, 15 L.Ed.2d 69 (1965), may "confuse the jury," Peterson v. Mountain States Tel. and Tel. Co., 349 F.2d 934, 937 (9th Cir. 1965), it has been held plain error for a district judge to fail to "relate the evidence to the law." McNello v. John B. Kelly, Inc., 283 F.2d 96, 102 (3d Cir. 1960); Atkinson v. Roth, 297 F.2d 570, 574 (3d Cir. 1961); Choy v. Bouchelle, 436 F.2d 319, 325 (3d Cir. 1970).

In Lachman v. Pennsylvania Greyhound Lines, 160 F.2d 496 (4 Cir. 1947), Judge Dobie found reversible error in a facially correct statement of the law by the district judge because "he did not discuss this abstract statement in connection with the facts of the case and the charge as given was misleading and prejudicial to the plaintiff." 160 F.2d at 501. *See* United States v. Rosenfield,

469 F.2d 598, 601 (3d Cir. 1972), cert. denied, 411 U.S. 932, 93 S.Ct. 1899, 36 L.Ed.2d 391 (1973); United States v. Salliey, 360 F.2d 699, 702 (4th Cir. 1966).

Different factual situations obviously call for different degrees of particularity. In the factual context of this case —identification by a single witness with no other corroborating circumstantial evidence—we have been warned of the "likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). A high degree of particularization of the legal standard is required because of such a likelihood, and, it is for this reason that we adopt the *Telfaire* rule.

Because we hold the charge to the jury on the question of identification insufficient, we reverse and remand for a new trial at which the defendant shall be accorded the benefit of the *Telfaire* instruction.

Vacated and remanded.

## APPENDIX: MODEL SPECIAL INSTRUCTIONS ON IDENTIFICATION

One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Government has the burden of providing [proving] identity beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

In appraising the identification testimony of a witness, you should consider the following:

(1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

[In general, a witness bases any identification he makes on his perception through the use of his senses. Usually the witness identifies an offender by the sense of sight—but this is not necessarily so, and he may use other senses.] *

(2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

[You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.]

---

* Sentence in brackets ([]) to be used only if appropriate. Instructions to be inserted or modified as appropriate to the proof and contentions.

[(3) You may take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with his identification at trial.]

(4) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.